AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of South Dakota

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  5:20-mj-131
A thumb drive containing the download of the encrypted )
compressed storage file containing the content of Facebook )
User: Scud Mart, https://www.facebook.com/scudmart23226, )
which is stored at the ATF Office in Rapid City.l

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE "ATTACHMENT A", which is attached to and incorporated in this Application and Affidavit.

located in the _____ District of _____South Dakota_____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE "ATTACHMENT B", which is attached to and incorporated in this Application and Affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(1) and 924(a)(2) | Possession of Firearm or Ammunition by a Prohibited Person |
| 26 U.S.C. §§ 5841, 5861(d), and 5871 | Receipt or Possession of Unregistered Firearm |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

ATF SA Riley Cook
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____06/24/2020_____

_____
*Judge's signature*

City and state:  Rapid City, SD

Daneta Wollmann, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF a thumb drive containing the download of the encrypted compressed storage file containing the content of Facebook User: Scud Mart, https://www.facebook.com/scudmart23226, which is stored at the ATF Office in Rapid City. | 5:20-mj-131<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

State of South Dakota ⟩
                ⟩ ss
County of Pennington ⟩

I, Riley Cook, being duly sworn, state as follows:

1.       I am a Special Agent ("SA") with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), currently assigned to the Rapid City Satellite Office. I have been employed by the ATF since July 2014. Prior to ATF, I was employed as a Special Agent with the South Dakota Division of Criminal Investigation where I was assigned to investigate felony crimes including, but not limited to, narcotics trafficking and other types of violent crime. I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC"). I have also completed ATF Special Agent Basic Training course. While attending the academies at FLETC in Glynco, Georgia, I received specialized training concerning violations of the Gun Control Act within Title 18 of the United States Code and violations of the National Firearms Act within Title 26 of the United States Code.

2.     As a law enforcement officer, I have participated in numerous federal and state investigations involving the sale, possession, and trafficking of firearms and/or controlled substances. I have also participated in various armed robbery cases.   Through my participation in these investigations, I have debriefed numerous defendants, informants, confidential sources, and witnesses who had personal knowledge regarding firearms and/or narcotics trafficking. I have also participated in undercover operations, conducted physical and electronic surveillance, used informants, seized firearms and narcotics, executed search warrants, and made arrests.

3.     I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that was stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.   The information to be searched is described in the following paragraphs and in Attachments A and B.

4.     This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user IDs.

5.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of 18

U.S.C. §§ 922(g)(1) and 924(a)(2) and 26 U.S.C. §§ 5841, 5861(d), and 5871, are present in the following Facebook account: user name: Scud Mart, URL: https://www.facebook.com/scudmart23226.   It is your affiant's belief that evidence of those crimes will be found in the content of the thumb drive containing an encrypted download of Scud Mart's Facebook account.  There is also probable cause to search the information described in Attachment A for evidence, contraband, or fruits of these crimes, as further described in Attachment B.  This affidavit is made for the sole purpose of demonstrating probable cause for the issuance of this search warrant and does not set forth all of my knowledge of this investigation.

6.      From my training and experience, I am aware that when Electronic Service Providers, like Facebook, provide access to an encrypted compressed storage file, typically a zip file, on its law enforcement portal. The link is to a file that is limited to the content of the account authorized by the search warrant and no other accounts.

7.      It is my understanding that I must seek this additional warrant to review the responsive materials out of an abundance of caution to comply with the issue raised in the recent decision in *United States v. Nyah*, 928 F.3d 694 (8th Cir. 2019).

### PROBABLE CAUSE

6.      On March 9, 2020, Oglala Sioux Tribe Department of Public Safety (OSTDPS) and Oglala Sioux Tribe Criminal Investigators (OST CI) received a call

3

of an armed subject in North Ridge, a housing community in Pine Ridge, SD. Upon arrival to the North Ridge area, OST CI John Pettigrew learned that Dale Martin, Jr., a/k/a Scud Martin, discharged several rounds outside of Jaden Turning Holy's, a/k/a Jaden Richards', trailer in North Ridge. Officers located one purple 16-guage shell casing outside of the residence. Martin was not immediately located.

7.     As officers and CI's remained outside of Turning Holy's residence, Turning Holy and John Hussman III arrived in a maroon truck. CI Pettigrew interviewed Turning Holy outside of her residence. Turning Holy stated that Martin was with her earlier that day and they were drinking with Feather Cottier inside her trailer. According to Turning Holy, Cottier called Martin a "bitch," and Martin got upset. Turning Holy said that Martin pumped a shell into the chamber and discharged one round outside of the trailer. Turning Holy took Martin to Thomas Brewer's old trailer. While in the truck, Martin discharged an additional round. A search of Turning Holy's truck revealed one purple spent 16-guage shell casing and a Prairie Winds Players Card with Martin's name on it. Turning Holy advised she had not seen Martin since dropping him off at Brewer's residence.

8.     Law enforcement eventually located Martin outside of his father's residence in Pine Ridge. Martin refused consent to search his dad's residence. Martin was arrested and placed inside a patrol vehicle while CI's drafted a search warrant. During the time officers were waiting, Martin's dad arrived and

consented to a search of his residence. Officers entered Martin's dad's residence and observed a short barrel shot gun laying on a couch. Near where the firearm lay, a scale, possibly used to weigh illegal substances, was located. Martin's dad advised the shotgun was not there earlier. Officers cleared the firearm and removed two purple 16-guage rounds.

9.     Your affiant took custody of the firearm. Your affiant identified the firearm as an Ithaca Gun Company, model 37, 16-guage pump-action shotgun (SN:None) with a barrel length of 15.75 inches and an overall length of 26.5 inches. Your affiant is aware that to lawfully possess a weapon of that length, one must register it with the National Firearms Registration and Transfer Record (NFRTR). Your affiant learned Martin did not register the firearm with the NFRTR. Additionally, your affiant is aware that Martin was convicted of Aggravated Assault in October 2017 from Pennington County and in September 2016 for Escape in Nebraska (possibly related to an assault on a corrections officer). Your affiant is aware that due to Martin's conviction(s), Martin is not eligible to possess a firearm. Your affiant also learned that the firearm was manufactured in the State of New York, thus affecting interstate commerce.

10.     In January 2020, your affiant reviewed Martin's public Facebook page, "Scud Mart," regarding an unrelated investigation. Your affiant noted that Martin posted a picture of himself with a shotgun that appears to have been modified. Due to the angle of the photograph, your affiant is uncertain if the shotgun in the picture is the same shotgun recovered by officers in March 2020.

5

11.    On March 19, 2020, the following Facebook account belonging to Martin was preserved: Screen Name: Scud Mart, https://www.facebook.com/scudmart23226.   Your affiant believes there is probable cause to search the Target Account for evidence of a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and 26 U.S.C. §§ 5841, 5861(d), and 5871, based on Martin's December 2019 post with a suspected illegal firearm and his arrest by tribal authorities in March 2020.

12.    On May 28, 2020, your affiant sought and obtained a search warrant for the Facebook account at issue.   Your affiant executed the court's search warrant the same day by serving it on Facebook via its law enforcement portal. Facebook did not provide the responsive materials within 14 days of the issuance of this Court's search warrant.   Your affiant received the original return from Facebook on the search warrant on June 23, 2020.   On June 23, 2020, your affiant office downloaded the files with success.  The information was in the form of a zip file, a PDF file, and included a Certificate of Authenticity.   Your affiant's office printed the Certificate of Authenticity, then burned the zip file and PDF file to a thumb drive on that same date, June 23, 2020.

13.    Although the information was accessed, it was accessed solely for the purpose of confirming the file was accessible.  The encrypted compressed storage file is being held securely at the FBI office in Rapid City, awaiting this search warrant.

14.    Your affiant, in consideration of the recent development in the Eighth Circuit, the *Nyah* decision of June 26, 2019, submits this request to search the thumb drive created on June 23, 2020, which contains the material provided by Facebook which was received by your affiant office outside the 14-day window on the original search warrant dated May 28, 2020.

## INFORMATION ON FACEBOOK

15.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows individuals to specifically communicate with another person through a Facebook application called "Messenger." In my training and experience, people who engage in online criminal activity often also utilize Facebook to meet victims and other offenders and to chat. Even if Facebook was not utilized in the chat at issue, there is probable cause to believe there will be evidence regarding the online solicitation of minors within the target Facebook account.

16.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

17.    Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or

7

thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

18.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

19.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other

account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

20. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

21. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not

9

been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

22.   Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.  These chat communications are stored in the chat history for the account.  Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

23.   If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

24.   Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third party (*i.e.,* non-Facebook) websites.   Facebook users can also become "fans" of particular Facebook pages.

25.   Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.   Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but people who visit the user's Facebook page cannot viewed it.

26.   Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

27.   The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

28.   Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

29.   In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.   When a Facebook user accesses or uses one of these

applications, an update about that the user's access or use of that application may appear on the user's profile page. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

30.   Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

31.   Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or

bank account number).   In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

32.   As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the user accessed or used the account.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along

with the time and date. By determining, the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

33. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED
## AND THINGS TO BE SEIZED

34.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## REQUEST/JUSTIFICATION FOR
## ORDER OF NONDISCLOSURE

35.     The United States respectfully applies for an order of nondisclosure to Facebook under 18 U.S.C. § 2705(b) regarding the following account: User Name: Scud Mart, URL: https://www.facebook.com/scudmart23226.     The United States is seeking this search warrant for user information, including all names, addresses, IP addresses, including historical, telephone numbers, other email addresses, information on length and types of services and any means of payment related to these accounts under the authority given by 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A). Based on § 2703(c)(3), the United States is not required to provide notice to the subscriber. Under § 2705(b), the United States may apply to the court for an order commanding Facebook not to notify the subscriber of the existence of the search warrant. The court may decide

15

what length of time shall apply to the order of nondisclosure if the court determines the notification to the subscriber could result in one of the five factors listed in the statute, which includes destruction of or tampering with evidence. 18 U.S.C. § 2705(b)(3). The basis for the request is that such disclosure could cause any person with access to the accounts, or any related account or account information, to tamper with or modify the content or account information and thereby destroy or tamper with evidence and otherwise seriously jeopardize the investigation. Especially due to the ease of access to Facebook, its content can be modified by persons with internet access and sufficient account information. As such, the United States respectfully requests this Court enter an order commanding Facebook not to notify the user of the existence of this warrant.

## REQUEST FOR SEALING

36.     I further request that the Court order that the matter be sealed until further order of the Court. The matter is an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal the matter because premature disclosure may seriously jeopardize the ongoing investigation.

## LIMIT ON SCOPE OF SEARCH

37.     I submit that if during the search, agents find evidence of crimes not set forth in this affidavit, another agent or I will seek a separate warrant.

16

## **CONCLUSION**

38.     Based on the forgoing, I request that the Court issue the proposed search warrant.

39.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).

40.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Dated: _June 24, 2020_____

_____
Special Agent Riley Cook
Bureau of Alcohol, Tobacco,

Firearms and

Explosives

SUBSCRIBED and SWORN to
_____in my presence
_____ by reliable electronic means
this 24th day of June, 2020.

_____
DANETA WOLLMANN
U.S. MAGISTRATE JUDGE

17

## ATTACHMENT A

### Property to Be Searched

This warrant applies to the thumb drive containing the June 23, 2020, download of the encrypted compressed storage file containing the content of Facebook user ID:

- User Name: Scud Mart;

- URL: https:// https://www.facebook.com/scudmart23226,

The above is held in secure storage at the ATF Office in Rapid City.

## ATTACHMENT B

### Particular Things to be Seized

All information described below that constitutes fruits, evidence and instrumentalities of violations of the Target Offenses from December 1, 2019, until the date of the warrant for the user IDs listed in Attachment A:

(a)     All contact and personal identifying information, including for Facebook user ID: user name: Scud Mart, URL: https://www.facebook.com/scudmart23226;

(b)     Including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(c)     All activity logs for the accounts and all other documents showing the user's posts and other Facebook activities;

(d)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(e)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests;

comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(f)   All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(g)   All "check ins" and other location information;

(h)   All IP logs, including all records of the IP addresses that logged into the accounts;

(i)   All records of the accounts' usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)   All information about the Facebook pages that the accounts are or were a "fan" of;

(k)   All past and present lists of friends created by the accounts;

(l)   All records of Facebook searches performed by the accounts;

(m)   All information about the users' access and use of Facebook Marketplace;

(n)   The types of service utilized by the user;

(o)   The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)   All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the accounts;

(q)   All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook accounts, including contacts with support services and records of actions taken.

(Please fill out this form and return it with your subpoenaed records. It may avoid the necessity of someone from your office having to appear at trial and testify as to the authenticity of the records. Thank you.)

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS
## PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by

_____,

hereinafter PROVIDER), and my title is _____.

I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER. The attached records consist of (generally describe records, i.e., number of pages/CDs/megabytes) _____

_____.

I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.    such records were generated by PROVIDER'S electronic process or system that produces an accurate result, to wit:

1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.    the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                           Signature

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of South Dakota

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No.  5:20-mj-131 |
| A thumb drive containing the download of the encrypted | ) |
| compressed storage file containing the content of Facebook | ) |
| User: Scud Mart, https://www.facebook.com/scudmart23226, | ) |
| which is stored at the ATF Office in Rapid City. | ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ District of _____ South Dakota _____
*(identify the person or describe the property to be searched and give its location)*:

A thumb drive containing the download of the encrypted compressed storage file containing the content
of Facebook User: Scud Mart, https://www.facebook.com/scudmart23226, which is stored at the ATF
Office in Rapid City., as further described in Attachments A and B, which are attached to and
incorporated in this Application and Affidavit.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

EEvidence of the crimes of Possession of Firearm or Ammunition by a Prohibit Person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)
(2), and Receipt or Possession of Unregistered Firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871, as described in ATTACHMENT
B, attached hereto and incorporated by reference.

I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before  *July 8, 2020*   *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to _____ Daneta Wollmann _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   *6-24-20   11:30am*                    *[signature]*
                                                              *Judge's signature*

City and state:      Rapid City, SD                    Daneta Wollmann, U.S. Magistrate Judge
                                                          *Printed name and title*

cc: AUSA Poppen via email

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>5:20-mj-131 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____


_____
*Executing officer's signature*


_____
*Printed name and title*